IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| BRANDY R. MCKINNON, | § |  |
|---|---|---|
|  | § |  |
| *Plaintiff*, | § |  |
|  | § |  |
| v. | § | Case No. 2:18-CV-00179-JRG-RSP |
|  | § |  |
| HOBBY LOBBY STORES, INC., ET AL, | § |  |
|  | § |  |
| *Defendants*. | § |  |
|  | § |  |

## **MEMORANDUM ORDER**

In this *pro se*[1] disability action, Defendant Hobby Lobby Stores, Inc. moves to compel arbitration in this action based upon an arbitration agreement entered into by Plaintiff Brandy McKinnon (Dkt. 46). Because this action is allegedly arbitrable, Defendant Hobby Lobby Stores, Inc. also asks the Court to stay this action pending arbitration. (Dkt. Nos. 46, 22, and 37).

### BACKGROUND

McKinnon was formerly employed by Defendant Hobby Lobby Stores, Inc. ("Hobby Lobby") in Longview, Texas from August 1997 until her termination on November 14, 2014 (Dkt. No. 1-1). In 2010, McKinnon received the Hobby Lobby's March 2010 Employee Handbook (Dkt. No. 46-2). The Handbook states, in relevant part:

> All employees and the Company [Hobby Lobby] mutually agree to submit all employment-related legal disputes […] between any employee and the Company to binding arbitration. All Company employees are required to sign and return a Mutual Arbitration Agreement as a condition of their employment and continued employment. The Mutual Arbitration Agreement is included at the end of this Employee Handbook.

---

[1] The Court has reviewed the U.S. Equal Employment Opportunity Commission's request for additional information from Plaintiff. (Dkt. No. 1-1). It appears to the Court that Ms. McKinnon was represented at some point by counsel at the Spielberger Law Group. *See id.* at September 15, 2017 Letter. However, she is proceeding *pro se* in this Court.

1

(Dkt. No. 46-1). The Handbook provides that arbitration shall be conducted pursuant to the American Arbitration Association's National Rules for the Resolution of Employment Disputes or the Institute for Christian Conciliation's Rules of Procedure for Christian Conciliation. *Id.* The Handbook also notes that employees could review the arbitration rules and procedures by either requesting copies from the employee's supervisor or the human resources department or visiting the arbitration provider organization's websites. *Id.* McKinnon signed the Employee Handbook Receipt and Acknowledgement Form on April 26, 2010. *See* (Dkt. No. 46-2). Signing the Acknowledgement Form is said to be an acknowledgement that an employee received a copy of the Handbook and understood that the employment relationship with Hobby Lobby was at-will. *See id.* McKinnon concedes that she signed the Acknowledgment Form.

McKinnon also concedes that she signed a "Mutual Arbitration Agreement" ("MAA") on April 26, 2010. *See* (Dkt. No. 46-3). The MAA reads, in part:

> This Agreement between Employee [McKinnon] and Company [Defendant Hobby Lobby] to arbitrate all employment-related Disputes includes, but is not limited to, all Disputes under or involving Title VII of the Civil Rights Act of 1964, the Civil Rights Act s of 1866 and 1991, the Age Discrimination in Employment Act, the Americans with Disabilities Act […] and all other federal, state, and municipal statutes, regulations, codes, ordinances, common laws, or public policies that regulate, govern, cover, or relate to equal employment, wrongful termination, […] defamation, […], pain and suffering, emotional distress, […] harassment and/or discrimination based on any class protected by federal, state or municipal law, or interference and/or retaliation involving […] harassment, discrimination, or the opposition of harassment or discrimination, and any other employment-related Dispute in tort or contract. […] By agreeing to arbitrate all Disputes, Employee and Company understand that they are not giving up any substantive rights under federal, state, or municipal law (including the right to file claims with federal, state, or municipal government agencies). Rather, Employee and Company are mutually agreeing to submit all Disputes contemplated in this Agreement to arbitration, rather than to a court. […] Employee and Company acknowledge that they have

2

> read this Mutual Arbitration Agreement, are giving up any right they might have at any point to sue each other, are waiving any right to a jury trial, and are knowingly and voluntarily consenting to all terms and conditions set forth in this Agreement. […] Ever individual who works for [Hobby Lobby] must have signed and returned to his/her supervisor this Agreement to be eligible for employment and continued employment with [Hobby Lobby]. [… McKinnon and Hobby Lobby] acknowledge that they have read this Mutual Arbitration Agreement, are giving up any right they might have at any point to sue each other, are waiving any right to a jury trial, and are knowing and voluntarily consenting to all terms and conditions set forth in this Agreement.

*Id.* Like the Handbook, the MAA provides that arbitration shall be conducted pursuant to the American Arbitration Association's National Rules for the Resolution of Employment Disputes or the Institute for Christian Conciliation's Rules of Procedure for Christian Conciliation. *Id.* The Handbook states that Hobby Lobby "shall bear the administrative costs and fees assessed by the arbitration provider selected by [McKinnon]: either the Employment Arbitration Rules and Mediation Procedures or the Institute for Christian Conciliation. [Hobby Lobby] shall be responsible for paying the arbitrator's fees." *Id.*

On May 2, 2018, McKinnon filed suit against Hobby Lobby and her former store manager, Defendant Kim Greenlee, alleging that she was wrongfully terminated on the basis of her disability and retaliated against in violation of the Americans with Disabilities Act, 42 US.C. § 12113 *et seq.* (the "ADA") and Title VII of the Civil Rights Act of 1964. (Dkt. No. 1). McKinnon also brings claims for libel and slander. *Id.*

Hobby Lobby contends that McKinnon is bound by the MAA because she signed the MAA, provided written acknowledgement of Hobby Lobby's Employee Handbook and its arbitration policy, and continued her at-will employment. (Dkt. No. 46 at 7). Because this action is arbitrable, according to Hobby Lobby, this action must be stayed until arbitration is complete under the Federal Arbitration Act, 9 U.S.C. § 3 (the "FAA") because all of McKinnon's claims are subject

to arbitration. *Id.* Although McKinnon acknowledges that she was "willing at a time for [sic] Arbitration and Mediation," (Dkt. No. 23 at 3), McKinnon now opposes arbitration, arguing that she was 17 years old when she was "told to shut up and sign" the MAA to obtain her paycheck. (Dkt. No. 49 at 1-2). McKinnon further argues that Hobby Lobby's attempt to compel arbitration is untimely because the MAA provides that arbitration may not be initiated within one year of the day the dispute arose. *See id.* at 7; (Dkt. No. 23 at 2).

## DISCUSSION

Rather than submitting their dispute to a court, parties may seek alternative methods of resolving their dispute. One process of "alternative dispute resolution" is mediation, a process where the parties meet with an impartial and neutral person who assists the parties in negotiating their differences. Another traditional form of alternative dispute resolution is arbitration. Arbitration is an adjudicatory procedure in which a neutral third party (the "arbitrator"), rather than a judge or jury, renders a final and binding decision on a particular matter. Arbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit. *See Tittle v. Enron Corp.*, 463 F.3d 410, 418-19 (5th Cir. 2006).

Evaluating a motion to compel arbitration under the FAA involves a two-step analysis. *Papalote Creek II, L.L.C. v. Lower Colo. River Auth.*, 918 F.3d 450, 454 (5th Cir. 2019).

First, the court must determine whether the parties agreed to arbitrate the dispute in question. *See Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996). This determination involves two questions: (1) whether there is a valid agreement to arbitrate between the parties and (2) whether the dispute in question falls within the scope of that arbitration agreement. *Id.* These questions are resolved according to state law, in this case under the law of Texas, rather than the

4

federal policy favoring arbitration. *See id.* However, in applying state law, courts must give due regard to, and resolve ambiguities in favor of, the federal policy favoring arbitration. *See id.*

Second, if the court determines the parties agreed to arbitrate the dispute in question, then the court must determine "'whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims.'" *Tittle v. Enron Corp.*, 463 F.3d 410, 418 (5th Cir. 2006) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth*, 473 U.S. 614, 628 (1985)). Neither party has argued that external legal constraints foreclose arbitration of McKinnon's claims, so the Court concludes that the second step is satisfied. Accordingly, the Court will focus its analysis on whether the parties agreed to arbitrate the dispute in question.

### A. Whether There is a Valid Agreement to Arbitrate

Under Texas law, an employer may enforce an arbitration agreement entered into during an at-will employment relationship if the employee (1) received notice of the employer's arbitration policy and (2) accepted it. *See In re Dallas Peterbilt, Ltd., L.L.P.*, 196 S.W.3d 161, 162 (Tex. 2006). To provide notice, an employer must provide that it unequivocally notified the employee of the arbitration agreement. *See In re Halliburton Co.*, 80 S.W.3d 566, 568 (Tex. 2002). The notice analysis need not be confined to the underlying agreement, but to all communications between the employer and employee. *In re Dallas Peterbilt*, 196 S.W.3d at 162. As to whether the employee accepted the arbitration policy, an at-will employee who receives notice of an employer's arbitration policy and continues working with knowledge of the policy accepts the terms as a matter of law. *Id.* at 163.

#### 1. Notice

McKinnon claims that she was 17 years old when she signed the MAA, and that she was "told to shut and sign the Letter of Arbitration" to receive her paycheck. (Dkt. No. 49 at 1-2).

McKinnon also notes that she did not read the MAA because she wanted to receive her paycheck. *Id.* at 2. However, the record does not support McKinnon's contentions. Based on documents McKinnon filed with the Court (Dkt. No. 1-1), McKinnon was 17 years old when she was hired by Hobby Lobby, but she was 29 years old when she signed the March 2010 Handbook, the Acknowledgment Form, and the MAA. By signing the Acknowledgement Form, McKinnon was "acknowledge[ing] that [she] read and underst[ood] the provisions of [the] Employee Handbook," (Dkt. No. 46-2), which included provisions outlining the submission of disputes to binding arbitration and references to the MAA at the end of the Handbook. That McKinnon argues that she did not read the read the MAA because she wanted to receive her paycheck is not determinative, given that she signed the Acknowledgment Form indicating that she did read the MAA and all Hobby Lobby "employees [were] required to sign and return the MAA as a condition of their employment." (Dkt. No. 46-1). By signing the Acknowledgement Form, McKinnon also indicated that she understood that she could review the arbitration rules and procedures by either requesting copies from the employee's supervisor or the human resources department or visiting the arbitration provider organization's websites. *Id.*; (Dkt No. 46-2). Consequently, the Court finds that the Handbook, the Acknowledgement Form, and the MAA constitute effective notice "because it unequivocally provided [McKinnon with knowledge of the arbitration agreement." *In re Dallas Peterbilt*, 196 S.W.3d at 163.

   2. **Acceptance**

An at-will employee who receives notice of an employer's arbitration policy and continues working with knowledge of the policy accepts the terms as a matter of law. *Id.* It is undisputed that McKinnon was an at-will employee at Hobby Lobby, and McKinnon worked for another four years after receiving and signing the Handbook, the Acknowledgement Form, and the MAA. By

signing the MAA and Acknowledgment Form and continuing her employment for several years thereafter, McKinnon accepted the terms of the MAA.

**B. Whether the Dispute Falls Within the Scope of the Agreement**

To compel arbitration, Hobby Lobby must also show that McKinnon's claims fall within the scope of the MAA. *See Webb*, 89 F.3d at 258. There is a "strong presumption in favor of arbitration" once the Court concludes that there is a valid, enforceable arbitration agreement. *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex. 1995) (citations omitted).

Here, McKinnon sued for disability discrimination, retaliation, libel, and slander arising out of her employment relationship with Hobby Lobby. (Dkt. No. 1). The Handbook clearly states that all employment-related legal disputes are to be submitted to binding arbitration, (Dkt. No. 46-1), while the MAA specifically mentions disputes under or involving Title VII, the ADA, wrongful termination, defamation,[2] emotional distress, and harassment and/or discrimination based on any class protected by law. (Dkt. No. 46-3). Thus, McKinnon's claims fall within the scope of by the MAA.

McKinnon further argues that Hobby Lobby's attempt to compel arbitration is untimely because the MAA provides that arbitration may not be initiated within one year of the day the dispute arose. Dkt. No. 49 at 7); (Dkt. No. 23 at 2). McKinnon misreads the MAA. The MAA notes that disputes must be brought within the limitations period established by the applicable statute. (Dkt. No. 46-3). If there is no statutory limitation period, the MAA states that disputes must be brought within one year of the day on which the aggrieved party knew or should have known of the facts giving rise to the dispute. *Id.* Therefore, under this language, McKinnon, as the

---

[2] McKinnon brings claims for libel and slander. Libel and slander are two causes of actions for defamation. Libel is a written defamation. Tex. Civ. Prac. & Rem. Code Ann. § 73.001 (West 1986). Slander is an oral defamation. *Messina v. Tri-Gas Inc.*, 816 F. Supp. 1163, 1167 (S.D. Tex. 1993).

aggrieved party, would need to bring her action within one year of the day she knew of the facts giving rise to her dispute. This language does not preclude Hobby Lobby from seeking arbitration.

The Court therefore concludes that a valid arbitration agreement exists and that McKinnon's claims fall within the scope of the agreement.

**C. Whether to Stay this Action**

Hobby Lobby argues that this action should be stayed under the FAA. *See* (Dkt. No. 22 at 4). Defendants point out that the Court's proposed deadlines for the Docket Control Order (Dkt. No. 20) requires the parties to commence discovery 30 days after the Rule 16 scheduling conference. But engaging in discovery, Hobby Lobby contends, may constitute a waiver of arbitration. (Dkt. No. 22 at 4). Hobby Lobby argues that this Court may also dismiss McKinnon's claims with prejudice because all of her claims are subject to arbitration. (Dkt. No. 46 at 7) (citing *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161 (5th Cir. 1992)). Plaintiff's responsive briefing outlines her desire for this matter to remain live and to have her day in court. (Dkt. No. 23).

Section 3 of the FAA provides that when claims are properly referable to arbitration, that upon application of one of the parties, the court shall stay the trial of the action until the arbitration is complete. 9 U.S.C. § 3. Accordingly, "a stay is mandatory upon a showing that the opposing party has commenced suit upon any issue referable to arbitration under an agreement in writing for such arbitration." *Alford*, 975 F.2d at 1164 (internal citations and quotations omitted).

As discussed above, Hobby Lobby has shown that McKinnon commenced suit upon arbitrable issues, given that all of her causes of action fall within the scope of the MAA. Therefore, the Court grants Hobby Lobby's request to stay proceedings pending the outcome of the arbitration.

8

# CONCLUSION

McKinnon expresses that she "is worried this is just a ploy of Hobby Lobby and Kim Greenlee to silence Ms. McKinnon and her witnesses who are just seeking to clear their good names and to seek justice." (Dkt. No. 49 at 7). However, the MAA clearly states that by agreeing to arbitrate, McKinnon and Hobby Lobby "understand that they are not giving up any substantive rights under" federal law, and "are mutually agreeing to submit all Disputes contemplated in this Agreement to arbitration, rather than to a court." (Dkt. No. 46-3). Going to arbitration will not eviscerate McKinnon's claims against Hobby Lobby, but will only change the forum in which her claims can be heard.

Accordingly, Defendants' motions to stay (Dkt. Nos. 22 and 27) are **GRANTED** and Hobby Lobby's motion to compel arbitration and to stay action (Dkt. No. 46) is **GRANTED**.

It is therefore **ORDERED** that this matter is **STAYED** pending arbitration. It is further **ORDERED** that the parties advise the Court within 7 days of the completion of the arbitration or other disposition of the dispute.

**SIGNED this 15th day of May, 2019.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE