IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| BRANDY R. MCKINNON, § § *Plaintiff,* § § v. § § HOBBY LOBBY STORES, INC., and KIM § GREENLEE § § *Defendants*. § § | Case No. 2:18-cv-00179-JRG-RSP |

**REPORT AND RECOMMENDATION**

Before the Court, Plaintiff Brandy McKinnon proceeding *pro se* moves, Dkt. No. 81, to nullify or vacate the final award issued through arbitration between McKinnon and defendant Hobby Lobby Stores, Inc. ("HLS"). Conversely, HLS moves, Dkt. No. 87, to confirm the arbitration findings and award. After a thorough review of the record and the law, McKinnon's motion should be **DENIED** and HLS's motion should be **GRANTED.**

    **I.**    **BACKGROUND**

This suit arises from the termination of McKinnon as an employee of HLS. The following facts have been condensed from the record and are uncontested by McKinnon's motion to vacate. Prior to termination in November of 2014, McKinnon worked for the Longview, Texas store of HLS for eighteen years. McKinnon was trained for all departments and as a cashier and had been the nonsupervisory head of the art department for ten years by the time she was terminated. In December of 2013, McKinnon's mother passed away. The following July, McKinnon was diagnosed with acute depression.

1

Merchandise arrives each Monday at the store and must be stocked expeditiously. Greenlee, the store manager, held employee meetings each Monday morning and directed employees accordingly including moving employees who finished stocking merchandise in their respective department to another department with merchandise left to stock. The art department generally receives a considerable volume of merchandise, most of which is unpriced. As a result, stocking merchandise in the art department was time consuming, and McKinnon frequently requested help. There is no evidence that the request for help was related to her disability or that her ability to stock merchandise was hindered by her depression. The help McKinnon often received was from new employees, unfamiliar with pricing procedures, which made McKinnon's work harder.

More than the usual amount of merchandise arrived on November 17, 2014, in advance of Thanksgiving, Black Friday, and the holiday season. By the end of the day, many of the departments had yet to complete stocking, including the art department. Debbie Schumacher, an assistant manager recently promoted, asked McKinnon when she was scheduled to come in the following day. McKinnon responded with frustration about stocking and the lack of help. Dot Lefevere, another assistant manager recently promoted, overheard McKinnon and asked Schumacher if McKinnon had "popped off." McKinnon then overheard Lefevere and Schumacher talking, believing they were talking about McKinnon's work ethic. McKinnon then started arguing with Lefevere and Schumacher in an irritated manner.

Around 10:30 p.m., McKinnon called Greenlee to inform Greenlee of the argument, to complain about the lack of help, and to further inform Greenlee of McKinnon's intent to file a complaint with HLS's Human Resources department and the Equal Employment Opportunity Commission. After some time, Greenlee told McKinnon to return the following morning.

Greenlee then contacted the store's district manager Toni Langford about the incident. Langford interviewed Schumacher and Lefevere who both proclaimed a desire to no longer work with McKinnon.

The following morning, McKinnon arrived at the store and spoke with Langford and Greenlee. The conversation was at least argumentative. Ultimately, McKinnon refused to resign and left with the understanding that she would be fired. As a result of these events, the store terminated McKinnon's employment and a criminal trespass notice was filed banning McKinnon from the store. Two days later, McKinnon called the store to retrieve a framing certificate. During the call, McKinnon was informed of the criminal trespass notice. McKinnon then filed numerous complaints with Human Resources, none of which raised claims of disability-based discrimination. Langford investigated of the complaints, and on December 5, 2014, HLS notified McKinnon that the decision to terminate her was based on legitimate factors. Over a year later, McKinnon required art supplies from HLS. McKinnon arrived at the store ten minutes before opening and was waiting in her car in the parking lot. A store employee recognized McKinnon and informed a supervisor. The supervisor called the Longview Police Department to enforce the criminal trespass notice. Police arrived and told McKinnon to leave.

McKinnon filed the instant suit against HLS alleging discrimination against McKinnon because of her depression. She also sued Greenlee in the same complaint alleging defamation. The suit was stayed, and the parties were directed to proceed with arbitration as required under the employment contract between McKinnon and HLS. At the onset of the amended final award opinion, the arbitrator notes that Greenlee was dismissed from arbitration because Greenlee was "not a proper party." Dkt. No. 82 p 2.

## I. LAW

The Federal Arbitration Act provides for judicial review to confirm, vacate, or modify arbitration awards. 9 U.S.C. §§ 9-11. To vacate an award, the movant must show that either (1) the award was procured by corruption, fraud, or undue means, (2) the arbitrators were evidently partial or corrupt, (3) the arbitrators were guilty of misconduct by which rights have been prejudiced, or (4) the arbitrators exceeded their powers. *Id.* § 10(a).

McKinnon does not allege that the award was procured by corruption or fraud, that the arbitrators were partial or corrupt, or that the arbitrators exceeded their powers. McKinnon's motion does however raise facts sufficient to allege misconduct, specifically that the arbitrator (1) allowed witnesses for HLS to provide testimony during arbitration that was inconsistent with prior statements and (2) denied McKinnon to opportunity to present witnesses. *Id.* § 10(a)(3) ("where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced").

"To constitute misconduct requiring vacation of an award, an error in the arbitrator's determination must be one that is not simply an error of law, but which so affects the rights of a party that it may be said that he was deprived of a fair hearing." *El Dorado Sch. Dist. No. 15 v. Continental Cas. Co.,* 247 F.3d 843, 848 (8th Cir.2001) (internal quotation marks omitted); *see also Apex Fountain Sales v. Kleinfeld,* 818 F.2d 1089, 1094 (3d Cir.1987) ("Under Federal law, misconduct apart from corruption, fraud, or partiality in the arbitrators justifies reversal only if it so prejudices the rights of a party that it denies the party a fundamentally fair hearing.")

**II.     ANALYSIS**

McKinnon argues that several witnesses for HLS during the arbitration offered testimony inconsistent with prior statements and evidence in the record and committed perjury. For example, McKinnon argues that (1) another supervisor, John Paul James, had sent McKinnon home in the past on a few unrelated occasions, when there was actually no record of such disciplinary action and another witness testified to McKinnon having never been sent home, (2) Greenlee and Langford stole merchandise from the store, and (3) Schumacher and Lefevere previously stated that they were not threatened by McKinnon the night of November 17, 2014, but testified otherwise at the arbitration hearing. Dkt. Nos. 81, 88. However, these facts are immaterial to McKinnon's claims of discrimination against HLS. For example, whether McKinnon was ever previously disciplined or sent home in the past or whether Greenlee and Langford stole from HLS does not alter the events that transpired on November 17, 2014, or thereafter. Likewise, whether or not Schumacher and Lefevere felt threatened by McKinnon is unrelated to whether McKinnon was arguing with Schumacher, Lefevere, Greenlee and Langford, all of whom were McKinnon's supervisors at the time in question. In addition, McKinnon does not allege that she was denied an opportunity to cross examine the witnesses to diminish their credibility before the arbitrator. Accordingly, McKinnon's ability to assert and support claims of discrimination was not prejudiced by the arbitrator's alleged decision to entertain inconsistent statements.

McKinnon also argues that the arbitrator refused to allow witnesses for McKinnon to testify during arbitration. McKinnon presented two witnesses who could ostensibly testify to discriminatory treatment they received from Greenlee and other HLS manager. Dkt. No. 81 p 2. However, those witnesses would only be able to testify to discrimination they received as opposed to the discrimination McKinnon received. Additionally, McKinnon presented four witnesses who

could ostensibly testify to the alleged theft by Greenlee and Langford. As addressed above, such testimony has no bearing on McKinnon's claims of disability discrimination against HLS. Accordingly, McKinnon's ability to assert and support claims of discrimination was not prejudiced by the arbitrator's decision to preclude that witness testimony.

Without basis to vacate the arbitration reward, the court must confirm it and dismiss with prejudice McKinnon's claims against HLS. 9 U.S.C. § 9. Remaining will be McKinnon's state law defamation claims against Greenlee. Because the claims against HLS, over which the Court has original jurisdiction, should now be dismissed, we have the obligation to examine the basis for subject matter jurisdiction over the claims against Greenlee. Our jurisdiction over McKinnon's claims against Greenlee is supplemental jurisdiction under 28 U.S.C. § 1367. Since both McKinnon and Greenlee were citizens of Texas at the time the lawsuit was filed, and further because the record does not show that the amount in controversy on the defamation claim exceeded the $75,000 jurisdictional amount, diversity jurisdiction is not present over the claim against Greenlee. Since the federal claim was sent to arbitration at an early stage in the litigation, there has been no development of the record as to the state defamation claim, and the federal claim is to be dismissed, the Court determines that dismissal without prejudice is appropriate for the claim against Greenlee under 28 U.S.C. § 1367(c)(3).[1]

## RECOMMENDATION

For the reasons discussed above, **IT IS RECOMMENDED** that McKinnon's motion to nullify the arbitration award should be **DENIED**, that HLS's motion to confirm the arbitration award should be **GRANTED** to confirm the arbitration award and **DISMISSING with prejudice**

---

[1] Any applicable state law statute of limitations period is tolled both during the time the federal case was pending and for a period of 30 days after dismissal. 285 U.S.C. § 1367(d); see *Jinks v Richland Cnty., S.C.*, 538 U.S. 456, 461-'65 (2003); *Artis v. Dist. of Columbia*, 138 S.Ct. 594, 605 (2018) ("Congress did provide for tolling not only while the claim is pending in federal court, but also for 30 days thereafter.")

McKinnon's claims against HLS, and that McKinnon's claims against Greenlee should be dismissed without prejudice to timely refiling in state court pursuant to 28 U.S.C. § 1367(d).

A party's failure to file written objections to the findings, conclusions and recommendations contained in this report within 14 days bars that party from *de novo* review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. Fed. R. Civ. P. 72(b)(2); *see also Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (*en banc*). Any objection to this Report and Recommendation must be filed in ECF under the event "Objection to Report and Recommendation [cv, respoth]" or it may not be considered by the District Judge.

**SIGNED this 21st day of June, 2022.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE